## J. A. Nard v. A. H. Baker.

Decided January 11, 1901.

**School Land—Appraisement—Mistake of Clerk—Award.**

A section of school land was classified by the Commissioner of the General Land Office in 1887 as "agricultural," and appraised at $2 per acre, and afterwards the commissioners court reclassified it as "dry grazing," but did not reappraise it, and the county clerk, in mistake of instructions from the Land Office, put the land on his record as grazing land at $1 per acre. The Commissioner awarded the land to defendant upon his application thereafter as an actual settler offering $1 per acre, but subsequently awarded it to plaintiff, who applied for it, at $2 per acre. The evidence showed that defendant was not an actual bona fide settler upon the land, and that his application was made in collusion with another. Held, that plaintiff was entitled to recover the land, and that, as the act of the clerk in putting the land on the record at $1 per acre was without authority, the sale at that price was void. Hunter, Associate Justice, holds that plaintiff was entitled to recover, but is of opinion that while the clerk had not authority to put the price on his records at $1, yet having done so, and the Commissioner having awarded the land at that price, this was such a ratification as rendered the sale at $1 per acre valid.

Appeal from Roberts. Tried below before Hon. B. M. Baker.

*H. E. Hoover* and *Hendricks & Coffee,* for appellant.

*Plemons & Veale,* for appellee.

HUNTER, Associate Justice.—This was an action of trespass to try title brought by Baker against Nard to recover section 6, block Y, certificate No. 1-16, issued to Morrison and Cummings, public free school land lying in Hutchinson County. The defendant answered by plea of not guilty. The case was tried by a jury, who found a verdict in favor of plaintiff, and from a judgment rendered thereon this appeal is taken.

The facts are substantially as follows: On July 13, 1900, Baker applied to the Commissioner of the General Land Office to purchase the section, describing it as "section 6, block Y, certificate No. 1-16 M. & C. Ry., classified as dry grazing land," and offered $1 per acre, paid the cash, and executed his obligation to the State for the balance as required by law. The Commissioner awarded and sold the land to him on said application on the 13th day of January, 1900, but on the 26th day of April, 1900, canceled the sale because the land had been previously leased to J. M. Coburn, who filed affidavits with the Commissioner that he had on said section $200 worth of improvements. We find that Coburn never had $200 worth of improvements on said land.

In June, 1899, Coburn sold his improvements on said section to the defendant, Nard, who settled on it, and on the 8th day of February, 1900, applied to purchase the same at $1 per acre, and it was on that day awarded and sold to him by the Commissioner. On the 14th day of January, 1901, Baker, still residing on the land, made a second ap-

plication to purchase it, at $2 per acre, and this time described it correctly in his application, but in his obligation still described it as "M. & C. Ry. Company" land. This application was rejected by the Commissioner.

The land was classified as "agricultural," and appraised at $2 per acre by the Commissioner in 1887, and in 1897 it was reclassified by the Commissioners Court of Roberts County, to which Hutchinson was attached for judicial purposes, as dry grazing land, but not reappraised. The clerk of the County Court, however, understood the letter of the Commissioner informing him of the reclassification to fix the appraised value at $1 per acre, and so entered all the unsold lands of the county at that classification and price, and they have so remained on the records ever since.

There is evidence sufficient to prove that Nard's application was made in collusion with Coburn, in whose pasture the section lies, and that he was not an actual, bone fide settler on the land, for the purpose of making it his home. The evidence was sufficient to establish that Baker was an actual, bona fide settler on the land at the time he made each application, and he paid to the State each time the proper sum of money based upon his bid, and filed the proper obligation for the balance, but the sum paid to the Treasurer on the first bid was returned to him by order of the Commissioner when the first sale to him was canceled. In this suit he claimed under both purchases.

The majority of the court is of opinion that the second application of Baker was good, and upon that the judgment must be sustained, because the original appraisement of the Commissioner at $2 per acre stood as the price of the land until changed by the Commissioner, and that the second classification did not change the price thus originally fixed upon it at $2 per acre; and they hold that the clerk had no authority to place the price at $1 per acre on his records, as he did, and that therefore the land was on the market, not at $1 per acre, but at $2, and consequently Baker's first application and Nard's should both have been rejected by the Commissioner, and that the award and sale in each instance was unauthorized and void.

I am of opinion, however, that, while the clerk was not authorized to put the price on his records at $1, yet, having done so, and Baker having made his application to purchase at the price shown on the clerk's records, and the Commissioner having awarded it to him at that price, it amounted in law to a ratification by the Commissioner of the clerk's act and record, and the sale to Baker in the first instance was valid. The Commissioner having power to fix the price at $1 or more, had the power to ratify the price fixed by the clerk at $1, and this ratification is proved by his awards and sales of the land to both Baker and Nard at that price. The ratification would relate back to the time when the clerk made the record. This view, I think, is correct in principle, and I have no doubt but there are hundreds of sections of land in Roberts,

and in Hutchinson and Gray counties, which are attached to Roberts for judicial purposes, that have been awarded and sold by the Commissioner by that record and at that price, and to hold as the majority have done will result in much confusion of titles and distress to many of the people of those counties.

We are all agreed, however, that the judgment in this case should be affirmed, as we have found no material error in the proceedings, and it is ordered accordingly.

*Affirmed.*